# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHELBY ROBERTS,                 )
                                )
            Plaintiff,          )
                                )
            v.                  )        1:22cv1114
                                )
CARTER-YOUNG, INC.,             )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Defendant's Motion to Dismiss (Docket Entry 3; see also Docket Entry 3-1 ("Brief in Support")). For the reasons that follow, the Court should grant the Motion to Dismiss.

## I. BACKGROUND

According to the Complaint, Plaintiff resided at an apartment complex named Ansley at Roberts Lake ("Ansley") in Arden, North Carolina, from November 2019 until January 2021. (Docket Entry 1 at 2.) Plaintiff's written lease allegedly expired in November 2020 (see id.), at which point her arrangement with Ansley "became a month-to-month tenancy that could be terminated by either [Plaintiff or Ansley] by providing 30-days written notice" (id.). The Complaint contends that Ansley attempted to lease Plaintiff's apartment to a new tenant (effective December 12, 2020) without providing Plaintiff with the requisite 30-days written notice (see

id.); Plaintiff thereafter "exercis[ed] her legal rights" (id. at 3), and informed Ansley "she would vacate [her] apartment on January 10, 2021" (id.).

Because Plaintiff refused to vacate her apartment absent 30-days written notice, the Complaint asserts that "Ansley was forced to breach [its] lease agreement" (id.) with the prospective new tenant and suffered "extreme embarrassment and potential financial liability" (id.). As a result, Ansley reportedly "sought to retaliate against Plaintiff" (id.) after she vacated the apartment in January 2021, by "attempt[ing] to charge [her] for alleged damages that either never occurred, were ordinary wear and tear items, or were grossly overstated" (id.).

Specifically, the Complaint details that Ansley retained Plaintiff's $500 security deposit, and additionally "sent Plaintiff an invoice in the amount of $791.14 for alleged damages not covered by the security deposit. The largest portion of this invoice (in excess of $500) was for the cost of a new stove, even though the only damage asserted was that the door handle to the oven had become detached from the oven door." (Id.) According to the Complaint, "the lease agreement, as well as [Ansley]'s obligations under N.C.G.S. § 42-42, [provide that] th[e broken oven] was an ordinary maintenance issue that Ansley could easily fix simply by reattaching the handle to the oven door." (Id.; see also id. at 4 ("Ansley had no plausible or legal basis for charging the cost of

2

such stove to Plaintiff given that the stove could easily be repaired in 15 minutes or less simply by reattaching the oven door handle.") The Complaint does not identify any other specific items for which Ansley sought to charge Plaintiff. (See id. at 3-4.)

Plaintiff refused to pay the invoice from Ansley, which resulted in Ansley "referr[ing] th[e] claim to Defendant [] to engage in collection efforts." (Id. at 4.) The Complaint states further that, when (in March 2021) Defendant first sought to collect the debt which the Complaint labels "fraudulent" (id. at 5), Plaintiff "sent Defendant a letter disputing the Ansley claim and describing the obvious[ly] retaliatory and false nature of the claim" (id.). Some time thereafter, Defendant allegedly "reported the fraudulent and invalid [debt] to the three major C[redit] R[eporting] A[gencies ("CRAs")]." (Id.)

Plaintiff did not immediately seek to resolve the disputed debt, reportedly because "[she] mistakenly believed it would not substantially impact her credit score or reputation or cause financial harm." (Id.) But, when seeking to lease a new apartment during the summer of 2022, "Plaintiff [allegedly] became aware that the reporting of the fraudulent Ansley claim would likely prevent her from being able to rent a residential apartment." (Id.) As a result of this new awareness, "Plaintiff filed a formal dispute" (id. at 6) with the three CRAs, which in turn "promptly reported [the dispute] to Defendant" (id.).

3

The Complaint contends that "Defendant [then] engaged in a purely perfunctory and biased investigation[ which involved] nothing other than request[ing] its paying client Ansley to recertify the validity of the Ansley claim." (Id. (internal quotation marks omitted).) Ansley allegedly attested to the debt's validity, which led Defendant to do the same, resulting in "the three major CRAs continu[ing] to report this fraudulent claim." (Id.) Per the Complaint, if "Defendant [had] engaged in even the most rudimentary investigation, it would have quickly discovered that the Ansley claim was on its face preposterous, fraudulent, and very likely retaliatory." (Id.; see also id. at 7 (describing as "insurmountable problem" that "Ansley was attempting to charge Plaintiff for the cost of a new stove when the detached door handle easily could have been reattached by maintenance in minutes at no cost").) In the ensuing months, the Complaint contends that "Plaintiff refiled formal disputes with the major CRAs" (id. at 7), but "Defendant [continued to] recertif[y] . . . the Ansley claim" (id.) after neglecting to "conduct[] any meaningful investigation" (id.).

The Complaint next recites that "Plaintiff [thereafter] filed a [state court] lawsuit against Ansley" (id.), in which she "hoped to invalidate through legal process the Ansley claim" (id. at 8). Ultimately, Plaintiff and Ansley allegedly settled the state court lawsuit in October 2022. (See id. at 10.) As part of the state

4

court settlement, the Complaint alleges that "Ansley [] instruct[ed] Defendant to report the Ansley claim to the CRAs as invalid" (id.), and Defendant did so, on October 7, 2022 (id.).

The Complaint contends that Defendant's alleged failure to reasonably investigate the validity of Plaintiff's disputed debt to Ansley constitutes a violation of the Fair Credit Reporting Act ("FCRA"). (See id. at 11-15.) Even with the eventual removal of the allegedly fraudulent debt from her credit report, Plaintiff reportedly suffered from "an extended inability to be approved for residential rental housing, increased out-of-pocket expenses and costs, damage to her reputation and credit, and emotional distress." (Id. at 14, 15.) As a result, the Complaint demands actual and punitive damages, costs, and attorneys fees. (See id.)

Defendant moved to dismiss the Complaint. (Docket Entry 3.) As the basis for dismissal, the Brief in Support argues that Plaintiff's "dispute [with Ansley wa]s a legal dispute instead of a factual inaccuracy" (Docket Entry 3-1 at 4), and that "[t]he FCRA['s mandate that certain entities conduct reasonable investigation of debt disputes] only applies to factual inaccuracies, not disputed legal questions" (id. at 6). In that regard, the Brief in Support notes that "[t]he basis of [Plaintiff's] [] disputes [with Ansley] was that she was being retaliated against and the claims were fraudulent." (Id. at 8.) In Defendant's view, the nature of those disputes "would have

5

[required Defendant] to make legal conclusions that Ansley retaliated against Plaintiff or committed fraud" (id.), a function not required by the FCRA, and in fact one that would constitute an impermissible "collateral attack on the validity of the debt" (id.). The Brief in Support continues by asserting that, "[t]o the extent that [Plaintiff] contends that her dispute was that the debt wasn't owed because neither the lease nor North Carolina law allows for such recovery, that too is a legal dispute." (Id.) Because either scenario (evaluating retaliation/fraud or the lease/state law) would involve Defendant "mak[ing] a legal determination" (id. at 9), and because the FCRA does not require entities like Defendant to undertake legal evaluations, the Brief in Support maintains that "[Plaintiff] has failed to state a [FCRA] claim" (id.).

In response, Plaintiff first posits that the Complaint plainly sets forth the three elements of a FCRA claim. (See Docket Entry 5 at 6-10.) As for the distinction between legal and factual disputes, Plaintiff counters that any such distinction only applies to investigations by CRAs, not entities that act as furnishers of information to CRAs, such as Defendant. (See id. at 10-14 (citing as support Saunders v. Branch Banking And Tr. Co. Of Va., 526 F.3d 142 (4th Cir. 2008)).) Finally, Plaintiff characterizes her dispute with Ansley as one based in fact, not law. (See id. at 16-20; see also id. at 18 (further contending that, to the extent the

6

debt dispute with Ansley qualified as legal in nature, "[n]o court . . . has ever held that a CRA or a furnisher is entitled to be willfully ignorant of basic legal principles or of the terms of any legal documents upon which the alleged debt is based").)

Defendant's Reply rejoins that <u>Saunders</u> does not apply, given the facts of this case. (<u>See</u> Docket Entry 6 at 1 ("[Plaintiff's] reliance on Saunders is misplaced").) In that regard, Defendant notes that the court in <u>Saunders</u> required a furnisher of information to report that the consumer disputed the debt, a more limited step than Plaintiff proposes and something that Defendant did include in its report. (<u>See</u> <u>id.</u> at 2.) The Reply concludes by asserting that "<u>Saunders</u> does not apply as broadly as [Plaintiff] contends" (<u>id.</u>), because that case "only applies to creditor data furnishers, not third-party data furnishers" (<u>id.</u> at 3), such as Defendant (<u>see</u> <u>id.</u>).

## II. DISCUSSION

"A motion to dismiss pursuant to [Federal] Rule [of Civil Procedure] 12(b)(6) tests the sufficiency of the claims pled in a complaint." <u>ACA Fin. Guar. Corp. v. City of Buena Vista, Va.</u>, 917 F.3d 206, 211 (4th Cir. 2019). "To sufficiently plead a claim, the Federal Rules of Civil Procedure require that a pleading . . . contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Id.</u> (citing Fed. R. Civ. P. 8(a) (internal brackets and quotation marks omitted)). Although

7

"[t]his pleading standard does not require detailed factual allegations," id., a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court thus need not accept as true any "legal conclusions," id., or "bare assertions devoid of further factual enhancement," Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

The FCRA serves "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007). To effectuate that first purpose, "[t]he FCRA imposes certain requirements on [CRAs], . . . and entities that furnish information to [CRAs]." Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005). The term furnisher of information "refer[s] to entities that transmit to CRAs information relating to debts owed by consumers." Aviles v. Equifax Info. Servs., LLC, 521 F. Supp. 2d 519, 522 (E.D. Va. 2007). CRAs, in turn, "assemb[e] or evaluat[e that] consumer credit information . . . for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f).

Relevant here, furnishers of information shoulder an independent duty to refrain from "furnish[ing] any information

8

relating to a consumer to any [CRA] if the [furnisher] knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). Also, and, "[a]t issue in this [case,] are the additional duties a furnisher incurs under § 1681s-2(b) if a consumer disputes the accuracy of information that the furnisher reports." Saunders, 526 F.3d at 148 (4th Cir. 2008). Under Section 1681s-2(b):

> a furnisher of information who has received notice of a dispute from a CRA is required to:
>
> (1) investigate the disputed information;
>
> (2) review all relevant information provided by the CRA;
>
> (3) report the results of the investigation to the CRA;
>
> (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and
>
> (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.

Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173, 1178 (10th Cir. 2013) (citing 15 U.S.C. § 1681s-2(b)(1)(A)-(E)).

Furnishers of information must conduct reasonable investigations after learning of a consumer dispute regarding a debt. See, e.g., Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir. 2004); see also 15 U.S.C. §§ 1681n (imposing civil liability for willful noncompliance with § 1681s-2(b)); 15 U.S.C. § 1681o (imposing civil liability for negligent noncompliance with § 1681s-2(b)). The reasonableness of an investigation turns on the

"information within the furnisher's possession, such as correspondence between the consumer and the furnisher, the data identified by the reporting agency as disputed, and the furnisher's other records relating to the disputed account." Daugherty v. Ocwen Loan Servicing, LLC, 701 F. App'x 246, 253 (4th Cir. 2017). "If a furnisher fails to comply with its obligations under § 1681s-2(b), the FCRA authorizes a consumer to assert a private cause of action." Stewart v. Equifax Info. Servs., LLC, 320 F. Supp. 3d 1186, 1198 (D. Kan. 2018).

Critically, "[a] legal dispute on the underlying debt is a collateral attack on the credit report and is insufficient to sustain a FCRA claim." Wilson v. Chrysler Cap., No. 19-CV-975, 2019 WL 12107374, at *3 (M.D.N.C. Nov. 14, 2019). Put another way, "a plaintiff's allegations of inaccurate reporting must dispute facts underlying the reporting rather than present legal defenses to paying the debt at issue." Perry v. Toyota Motor Credit Corp., No. 1:18-CV-34, 2019 WL 332813, at *7 (W.D. Va. Jan. 25, 2019); see also Hunt v. JPMorgan Chase Bank, Nat'l Ass'n, 770 F. App'x 452, 458 (11th Cir. 2019) (holding that "[a] plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b)"); Chiang v. Verizon New England Inc., 595 F.3d 26, 38 (1st Cir. 2010) (same).

10

Legal disputes regarding debts cannot sustain FCRA claims against furnishers of information because furnishers need only conduct reasonable investigations, see Johnson, 357 F.3d at 431, and they "[are] n[ot] qualified . . . to resolve" legal questions, DeAndrade v. Trans Union LLC, 523 F.3d 61, 68 (1st Cir. 2008). As a result, "the federal courts of appeals and district courts that have addressed this question are in widespread agreement that a plaintiff's legal challenge to the validity of a debt is alone insufficient to make a report of that debt factually inaccurate." Holland v. Chase Bank USA, N.A., 475 F. Supp. 3d 272, 276 (S.D.N.Y. 2020) (collecting cases). Two circuit courts have suggested that furnishers must consider legal issues related to a debtor's alleged liability. See, e.g., Gross v. CitiMortgage, Inc., 33 F.4th 1246, 1253 (9th Cir. 2022) (justifying holding on conclusion that "[f]urnishers[ ] stand in a far better position [than CRAs] to make a thorough investigation of a disputed debt" (internal brackets and quotation marks omitted)); Denan v. Trans Union LLC, 959 F.3d 290, 295 (7th Cir. 2020) (in dicta, positing that "it makes sense that furnishers shoulder this burden: they assumed the risk and bear the loss of unpaid debt, so they are in a better position to determine the legal validity of a debt"). However, the contrary view (that the FCRA does not impose a duty on furnishers to resolve legal questions), "certainly appears to represent the prevailing view."

<u>Mohnkern v. Equifax Info. Servs., LLC</u>, No. 19-CV-6446L, 2021 WL 5239902, at *6 (W.D.N.Y. Nov. 10, 2021).

In deference to that prevailing view, the Court should conclude that Plaintiff has failed to state a FCRA claim because her disputes regarding the debt rest on legal contentions rather than factual inaccuracies. As detailed throughout the Complaint, Plaintiff does not contest that she resided at Ansley, that Ansley sent her an invoice for damages after she vacated her apartment, or that she refused to pay said invoice. (<u>See</u> Docket Entry 1 at 2-4.) Rather, the Complaint contends that the charges from Ansley "never occurred,[1] were ordinary wear and tear items, or were grossly overstated." (<u>Id.</u> at 3.) Due to her prior history with Ansley, Plaintiff alleges that the charges "w[ere] completely fraudulent and retaliatory." (<u>Id.</u>)

Specifically, the Complaint challenges a charge of over $500 to repair an oven when "the only damage asserted was that the door handle to the oven had become detached from the oven door" (<u>id.</u>);

_____

    1 Of the three categories of charges Plaintiff references, charges for damage that allegedly "never occurred" most plausibly implicate factual rather than legal issues, and the Court could analogize them to the identity theft context. <u>See</u> <u>Abu-Eid v.</u> <u>Discover Prod., Inc.</u>, 589 F. Supp. 3d 555 (E.D. Va. 2022) (FCRA claim regarding reasonableness of investigation by furnisher after plaintiff disputed credit cards purportedly opened in his name could survive summary judgment). However, the Complaint fails to cite any specific damage that "never occurred," for which Ansley charged her. Accordingly, the Court should read that phrase in light of the Complaint's other allegations, such as that "Ansley never even replaced the stove" (Docket Entry 1 at 3) and therefore as synonymous with the phrase "grossly overstated" (<u>see</u> <u>id.</u>).

12

in Plaintiff's view, "the lease agreement, as well as the landlord's obligations under N.C.G.S. § 42-42, [categorize that as] an ordinary maintenance issue" (id.) for which Ansley could not charge Plaintiff, i.e., a legal defense to the debt. In that regard, tasking Defendant with investigating (and adjudicating) the validity of the debt (on the grounds Plaintiff raised) would have required Defendant to interpret Plaintiff's lease and North Carolina landlord-tenant law. But the FCRA does not impose on Defendant an "obligation to resolve legal disputes between a consumer and a creditor." Alston v. Branch Banking & Tr. Co., No. 15-CV-3100, 2016 WL 4521651, at *10 (D. Md. Aug. 26, 2016).

Plaintiff's claim thus closely resembles the claim in Jones v. City Plaza, LLC, No. 1:19CV924, 2020 WL 2062325 (M.D.N.C. Apr. 29, 2020). In Jones, the plaintiff, after vacating his apartment, received from his landlord "a letter demanding payment . . . for 'Early Term-paint, clean and make ready.'" Id. at *1. In addition, the landlord retained the plaintiff's security deposit. See id. The plaintiff "did not believe the law permitted [the landlord] to use his security deposit for what he understood to be normal wear and tear." Id. Sometime thereafter, the landlord reported the debt to a third-party collection agency, which in turn reported the debt to the three major CRAs. See id. at *1-2. Plaintiff then sued the third-party collection agency for violating

13

the FCRA by "fail[ing] to investigate [the plaintiff's] dispute."
Id. at *3.

In concluding that the plaintiff failed to state a FCRA claim, Jones observes that "claiming a factual inaccuracy is different than asserting a legal challenge to the debt." Id. at *4. The plaintiff, by arguing he could refuse payment for items that qualified as ordinary wear and tear, "challenge[d] the legal validity of the debt, not its factual accuracy." Id. at *6. As a result, Jones holds that the suit "[wa]s nothing more than an impermissible collateral attack on the debt," and that the plaintiff "failed to state a claim against [the debt collection agency] for violating [the FCRA]." Id.

Like in Jones, Plaintiff here has "challenge[d] the legal validity of the debt." Id. For example, the Complaint notes that "the lease agreement [and] N.C.G.S. § 42-42" forbid Ansley from charging Plaintiff for "ordinary wear and tear." (Docket Entry 1 at 3.) The Complaint goes on to contend that "Ansley had no plausible or legal basis for charging the cost of such stove to Plaintiff given that the stove could easily be repaired in 15 minutes or less simply by reattaching the oven door handle." (Id. at 4.) And Plaintiff concedes that, by filing a state court lawsuit against Ansley, she "hoped to invalidate through legal process the Ansley claim." (Id. at 8.) Taken together, the

14

Complaint's allegations make clear the legal, rather than factual, nature of Plaintiff's dispute of the Ansley debt.

Plaintiff's Response, with reference to <u>Saunders</u>, first contends that the distinction between legal and factual disputes arises only in investigations conducted by CRAs, not furnishers of information like Defendant. (<u>See</u> Docket Entry 5 at 10-14.) But the Court should not read <u>Saunders</u> as Plaintiff does.

In <u>Saunders</u>, the plaintiff sued his bank under the FCRA for reporting to CRAs a debt he had with the bank, without "indicat[ing] that [the plaintiff] had contested the legitimacy of the debt." <u>Saunders</u>, 526 F.3d at 146. In affirming a jury verdict in favor of the plaintiff, the United States Court of Appeals for the Fourth Circuit concluded that the bank's failure to report to the CRAs the fact that the plaintiff disputed his debt with the bank rendered its report "misleading in such a way and to such an extent that it can be expected to have an adverse effect," <u>id.</u> at 150, and therefore that the bank's report qualified as inaccurate within the meaning of Section 1681s-2(b)(1)(D).

Thus, Plaintiff's reading of <u>Saunders</u> misses the mark for two reasons. First, the claim in <u>Saunders</u> addressed the accuracy of the information the bank furnished to the CRAs (Section 1681s-2(b)(1)(D)), not the requisite scope and/or reasonableness of the bank's investigation (Section 1681s-2(b)(1)(A)). Second, to the extent a reasonable investigation aids in the provision of accurate

information, the Fourth Circuit did not, by holding that furnishers of information must also report to CRAs the existence of a dispute by the consumer as to the debt in question, instruct furnishers to resolve, or even consider, legal questions. Whether or not a consumer disputes a debt represents a **factual issue**, one that any reasonable investigation could identify (particularly given that a consumer's dispute to a CRA under Section 1681i(a)(2) triggers a furnisher's duty to investigate under Section 1681s-2(b)(1)). Saunders did not hold that furnishers must evaluate the merits of those disputes, only that furnishers must report the fact of a dispute's existence. See id. (reporting view of courts "that a disputed debt differs materially from an undisputed debt **even if** the consumer would not succeed at a trial of the dispute," i.e., that merits of consumer's dispute regarding debt lack relevance to furnishers' investigatory function).

Plaintiff further cited one passage from Saunders for the proposition that "[c]laims brought against CRAs based on a legal dispute of an underlying debt raise concerns about collateral attacks because the creditor is not a party to the suit, while claims against furnishers such as [the defendant] do not raise this consideration because the furnisher is the creditor on the underlying debt," id. (internal quotation marks omitted). (See Docket Entry 5 at 11.) But again, this language sought to address circumstances where a consumer challenges the **accuracy** of a report

16

that fails to include **the fact** that a consumer disputes a debt. The court did not in any way suggest that the scope of an investigation by a furnisher must include resolving legal questions. Moreover, unlike in <u>Saunders</u>, where the defendant bank acted both as creditor and furnisher of information, the Complaint here does not allege that Defendant acts as a creditor (or assumed the debt from Ansley), and in fact contains indicia that Ansley remained as the creditor (<u>see</u> Docket Entry 1 at 4 (stating that Ansley "referred th[e] claim to Defendant [] to engage in collection efforts"), 6 (reflecting that Defendant asked Ansley to "recertify the validity" of the debt, an unnecessary action had Defendant instead assumed the debt)). Therefore, <u>Saunders</u>'s "concerns about collateral attacks [remain in this case] because the creditor[, Ansley,] is not a party to the suit," <u>Saunders</u>, 526 F.3d at 150 (internal quotation marks omitted).

Plaintiff's Response goes on to cite the Ninth Circuit's decision in <u>Gross</u> for the proposition that the "FCRA will sometimes require furnishers to investigate, and even to highlight or resolve, questions of legal significance," <u>Gross</u>, 33 F.4th at 1253. (<u>See</u> Docket Entry 5 at 11.) But that case involved the defendant reporting an outdated junior mortgage as an active debt, even though Arizona's Anti-Deficiency Statute had abolished the mortgage as a result of foreclosure proceedings years before the defendant's report. See <u>Gross</u>, 33 F.4th at 1249. Thus, in <u>Gross</u>, some prior

17

operation of law (akin, as the Ninth Circuit said, to bankruptcy proceedings that result in discharge, see id. at 1252) had rendered the debt invalid. As a result, the defendant in Gross did not need to resolve a legal issue, only ascertain that resolution of a legal issue had previously occurred. Plaintiff cannot make the same argument in this case, because no one had evaluated the legal questions Plaintiff presented in the Complaint, such as (1) whether Ansley could retain Plaintiff's security deposit for ordinary wear and tear, and (2) whether Ansley could charge Plaintiff the full replacement value of a stove when the alleged damage consisted of a broken door handle.[2] Moreover, even if the Court agreed with the Ninth Circuit's view that "[t]he distinction between 'legal' and 'factual' issues is [at times] ambiguous," id. at 1253, this case does not present one of those situations, and, in any event, such a conclusion would run counter to the consensus view of "the federal courts of appeals and district courts that have addressed this question," Holland, 475 F. Supp. 3d at 276; accord Mohnkern, 2021 WL 5239902, at *6.

The Response concludes by arguing that, even if furnishers bear no obligation to resolve legal questions, the issues Plaintiff

_____

2 As for the Complaint's allegation that certain charges "were grossly overstated" (Docket Entry 1 at 3), without any more specific information, that contention remains too conclusory to support a claim. Certainly, a reasonable investigation by Defendant should not require hiring contractors to visit apartments across the country in order to render second opinions as to repairs that have already taken place.

18

raised with regards to the Ansley debt constitute factual issues. (See Docket Entry 5 at 14-20.)  In particular, the Response states that Defendant did not have to find that Ansley retaliated against Plaintiff as a matter of law because "Ansley's retaliatory motive is not a legal defense [but rather] an explanation for why Ansley would falsify the debt."  (Id. at 14-15.)  Similarly, the Response contends that Plaintiff "us[ed] the terms 'fraud' and 'fraudulent' as those terms are defined in common usage."  (Id. at 15-16.)  As a result, Plaintiff argues that there "were at least three specific factual contentions [Defendant] could have investigated" (id. at 16), including whether the damages occurred, whether Ansley exaggerated other damages, and whether Ansley replaced the stove in Plaintiff's apartment, or simply reattached the broken handle (see id.).  In Plaintiff's view, "[t]hese facts were all subject to reasonable investigation and, if found to be true, would have required Defendant to delete, or at least substantially modify, its reporting of the Ansley claim."  (Id.)

The Court should reject this argument, because Plaintiff failed to address **why** Defendant would have had to modify its report, and the "why" would require Defendant's interpretation and application of a legal instrument (Plaintiff's lease) or state law. Perhaps, as Plaintiff insists, Defendant could have further investigated the charges from Ansley (even though, to repeat, the reasonableness of an investigation turns on the "information **within**

19

***the furnisher's possession***," <u>Daugherty</u>, 701 F. App'x at 253 (emphasis added)). But even if Defendant had done so, any conclusion it could have made that certain charges fell within the category of "wear and tear," or that others "were grossly overstated (and therefore not collectible), would, in order to have any meaning, necessarily require Defendant to refer to Plaintiff's lease or state law. Absent reference to applicable legal principle, these phrases represent nothing more than conclusory labels. Put another way, even if Defendant had found fault with some or all of the charges comprising the Ansley debt, the ***fact*** of Plaintiff's debt to Ansley would have remained unchanged; Defendant holds neither the statutory obligation nor authority to extinguish a consumer's debt. Ergo, Plaintiff did not identify a factual inaccuracy with the report, and instead sought to (impermissibly) leverage the FCRA to collaterally attack her debt with Ansley.

Plaintiff appears to (at least implicitly) recognize that her dispute over the debt entails legal questions, insofar as she goes on to assert that "[n]o court . . . has ever held that a CRA or a furnisher is entitled to be willfully ignorant of basic legal principles or of the terms of any legal documents" (Docket Entry 5 at 18), and that "[t]here is nothing controversial about the contention that a landlord has an obligation to repair ordinary wear and tear items at its own expense" (<u>id.</u>). To Plaintiff, then,

20

furnishers must answer legal questions so long as they qualify as "basic" or "not[] controversial." The FCRA, however, requires that furnishers scrutinize factual issues, not participate in abstract legal, line-drawing exercises.

In sum, "[d]etermining whether [Plaintiff] was entitled to [refuse] making [] payment[ on the debt wa]s a question for a court to resolve in a suit against [Ansley] - and [Plaintiff] did file a state suit against [Ansley] - not a job imposed upon [Defendant] by the FCRA." DeAndrade, 523 F.3d at 68. Unlike some other cases, "[t]he legal status of [Plaintiff's] debt had [***not***] already been decided by order of the court[]. Thus, per the allegations in Plaintiff's Complaint, there ***was*** [a] legal issue remaining for Defendant to determine." Campbell v. Equifax Info. Servs., LLC, No. 4:18-CV-53, 2019 WL 1332375, at *7 (S.D. Ga. Mar. 25, 2019) (emphasis added). Moreover, the FCRA only requires that Defendant conduct a reasonable investigation of the facts underlying a disputed debt, see Johnson, 357 F.3d at 431; it does not mandate that Defendant resolve legal questions, a function for which Defendant "is n[ot] qualified," DeAndrade, 523 F.3d at 68. Accordingly, because the Complaint fails to "show a factual inaccuracy [in Defendant's reports]," Hunt, 770 F. App'x at 458, her claim constitutes "an impermissible collateral attack on the debt," and she has thus "failed to state a claim against

21

[Defendant] for violating [the FCRA]," Jones, 2020 WL 2062325, at *6.

### III. CONCLUSION

The Complaint's allegations describe a legal dispute to Plaintiff's debt, rather than a factual inaccuracy underlying Defendant's report.

**IT IS THEREFORE RECOMMENDED** that the Motion to Dismiss (Docket Entry 3) be **GRANTED.**

This 6th day of July, 2023.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

22